## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SHEEGHNA LOTTINGER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-971 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, Plaintiff Sheegna Lottinger has filed a Motion for Summary Judgment [Doc. # 11] ("Plaintiff's Motion").  Defendant Michael J. Astrue, Commissioner of Social Security, also filed a Motion for Summary Judgment [Doc. # 12] ("Defendant's Motion"), and Plaintiff filed a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment [Doc. # 13] ("Plaintiff's Response").  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's Motion should be **denied** and Defendant's Motion should be **granted**.

## I.     BACKGROUND

### A.  **Procedural Background**

Lottinger filed an application for Title II disability insurance benefits with the Social Security Administration ("SSA") on December 27, 2005, alleging disability beginning on May 2, 2002.[1]  After being denied benefits initially and on reconsideration, Lottinger timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ Philip R. Kline held a hearing on April 8, 2008, in Houston, Texas.[2]  No medical or vocational expert testified.  In a decision dated May 9, 2008, the ALJ denied Lottinger's application for benefits.[3]  On June 11, 2008, Lottinger requested review of the ALJ's decision by the SSA's Office of Hearing and Appeals.  On January 23, 2009, the Appeals Council denied Lottinger's request to review the ALJ's decision, rendering the ALJ's determination final.  Lottinger filed this case on March 30, 2009, seeking judicial review of the Commissioner's denial of her claim for benefits.

---

[1]     Lottinger had previously filed an application for Title II disability benefits on March 25, 2003, alleging disability beginning October 30, 2001.  This claim was denied initially and on reconsideration.  On January 13, 2005, Administrative Law Judge Rafael Lugo-Villanova denied benefits, holding that claimant was not disabled during the relevant period. R. 11.

[2]     R. 37-65 (hearing transcript).

[3]     R. 11-20 (ALJ decision).

B.      **Factual Background**

Lottinger claims disability as a result of tinnitus; hypertension;  degenerative disc disease; history of deep venous thrombosis; obesity; vertigo; carpal tunnel syndrome; fibromyalgia; and anxiety, panic attacks, and agoraphobia.

The relevant period for Lottinger's disability claim is January 14 - December 31, 2005.  Although Lottinger alleges disability beginning on May 2, 2002, ALJ Kline held that the previous ALJ determination dated January 13, 2005, was final and binding, and therefore that the period under consideration began on January 14, 2005. Furthermore, because her date last insured ("DLI") is December 31, 2005, Lottinger must establish disability prior to that date.     The ALJ found no disability during the relevant period of January 14 - December 31, 2005.

During 2005 Plaintiff was treated at various clinics, including Northwest Clinic, Ben Taub Hospital, People's Community Health Center, and Quentin Meese Hospital. Much of her treatment was provided by Eric Warwick, M.D.  Many records from the relevant period are handwritten and some are largely illegible.

In January 2005, Dr. Warwick ordered an electromyography examination because of Lottinger's history of pain in her upper buttock and leg.[4]  The results of the test were normal, with "[n]o electrodiagnostic evidence of lumbar radiculopathy or

---

[4]      R. 283-84.

peripheral neuropathy at this time."[5]

In the spring of 2005, Lottinger complained of back and elbow pain, obesity, deep vein thrombosis, and tinnitus, among other conditions.[6]  In May she reported dizziness, vertigo, stress, tinnitus, and poor sleep.[7]

In June 2005, because of dizziness, Lottinger had an MRI of her brain.  The results were normal but revealed an area of apparent narrowing in the left petrous carotid.[8]  The results state, "It is uncertain whether this apparent narrowing represents a real finding or an artifact.  No other stenosis is seen in the carotid arterial system on either side."[9]  Dr. Warwick's notes from a follow up visit state "possible carotid stenosis—special procedure."[10]  Dr. Warwick also referred Lottinger to an ENT specialist because of her tinnitus, hearing loss, and vertigo, stating "Please consider inpatient admission for evaluation of disorder as [patient] has sever[e] symptoms off meds and is concerned about this."[11]  At an appointment on July 20, 2005, Lottinger

---

[5]      R. 284.

[6]      R. 177.

[7]      R. 176.

[8]      R. 234.

[9]      *Id.*

[10]     R. 174.

[11]     R. 175.

complained of intermittent dizziness and tunnel vision.[12]

On July 25, 2005, Lottinger was involved in a car accident. She apparently chose not to go to the hospital immediately. On July 28, 2005, she called Dr. Warwick's office and reported aches and dark urine since the accident; Dr. Warwick advised her to seek emergency care immediately or, at a minimum, come to his clinic the next morning.[13] It is not clear whether she did so. She apparently had a second car accident in August or November 2005.[14] Her medical records from the months after the accident indicate that she had a persistent frontal headache,[15] suffered from neck and back pain,[16] coughed up blood,[17] and had blood in her nose,[18] in addition to her previously existing disorders.[19] She was diagnosed with post-concussion

---

[12]   R. 220.

[13]   R. 172.

[14]   R. 215 (accidents in July and August 2005); R. 217 (second accident in August 2005); R. 166 (accident in November); R. 218 (accident in November).

[15]   R. 166-67, 170, 215. Around Thanksgiving 2005, Lottinger had an intense headache with generalized weakness and difficulty with speech and reading; her speech and reading improved within two weeks. R. 212.

[16]   R. 170-71, 215.

[17]   R. 167-68.

[18]   R. 166-67.

[19]   *See generally* R. 166-72, 212-219.

syndrome.[20]   Plaintiff's briefing does not assert post-concussion syndrome, or any associated symptoms, as a basis for disability.

On November 1, 2005, Dr. Warwick referred Lottinger to a neurology clinic for a diagnosis to account for her anxiety, migraine headaches, hearing loss, tinnitus, and carotid abnormality.[21]   Dr. Warwick's follow-up notes on December 17, 2005, note "[normal] gait and neurological exam."[22]   Another physician who treated Lottinger in December 2005 assessed her as having no focal neurologic deficits.[23]

Plaintiff's counsel has submitted multiple questionnaires regarding Lottinger's condition, all completed by Dr. Warwick in February 2008, *i.e.*, more than two years after her DLI.[24]   In two of these questionnaires, Dr. Warwick checked a box indicating that Lottinger was incapable of even low stress jobs.[25]   However, none of these

---

[20]   R. 213-15, 217.

[21]   R. 233.   Handwritten notes on the referral sheet state "Stroke clinic" and "appt 2/13/06 stroke."   *Id.*

[22]   R. 166.   Dr. Warwick ordered a CT scan of her head and sinuses.   *Id.*   Another doctor also ordered a CT scan.   R. 217.

[23]   R. 215.

[24]   Arthritis RFC Questionnaire, R. 445-52; Physical RFC Questionnaire, R. 453-57; Fibromyalgia RFC Questionnaire, R. 458-62; Lumbar Spine RFC Questionnaire, R. 463-67; Listing §1.04A Spinal Nerve Root Compression Questionnaire, R. 468-470.

[25]   R. 455 (Physical RFC Questionnaire); R. 460 (Fibromyalgia RFC Questionnaire). *Cf.* R. 448 (in arthritis questionnaire, Warwick checked boxes stating Lottinger was
(continued...)

questionnaires isolated the relevant period of January 14, 2005 – December 31, 2005. Only one, the Physical RFC Questionnaire, asked specifically about the date of onset. In response to the question, "What is the earliest date your patient reached the level of impairment described by the foregoing limitations," Dr. Warwick responded, "10/2006."[26]

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[27]   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[25]    (...continued)
capable of low or moderate stress jobs, and wrote in explanation that she "would be able to tolerate a desk job").

[26]    R. 457.  As noted in the questionnaires, Dr. Warwick had treated Lottinger since March 7, 2005. *E.g.*, R. 454.

[27]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

and that the movant is entitled to judgment as a matter of law."[28]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29]

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[30]  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[31]  It is more than a mere scintilla and less than a preponderance.[32]

When applying the substantial evidence standard on review, the court

---

[28]   FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[29]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[30]   *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[31]   *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[32]   *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

scrutinizes the record to determine whether such evidence is present.[33] In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[34] If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[35] Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[36] The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[37] In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[38]

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

---

[33]   *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[34]   *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[35]   *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[36]   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[37]   *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[38]   *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[39]  "Disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[40]

### B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[41]   The

---

[39]    42 U.S.C. § 423(c) & (d).

[40]    42 U.S.C. § 423(d)(1)(A).

[41]    *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

claimant has the burden to prove disability under the first four steps.[42]  If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[43]   Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[44]  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[45]

In this case, the ALJ determined that Lottinger last met the insured status requirements on December 31, 2005—her "date last insured," or DLI.  At step one of the analysis, he found that she had not engaged in substantial gainful activity during the relevant period.[46]  At step two, he determined that she suffered from five severe impairments (tinnitus, hypertension, degenerative disc disease, history of deep venous thrombosis, and obesity).[47]  However, at step three, he found that these impairments,

---

[42]     *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[43]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[44]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[45]     *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

[46]     R. 13.

[47]     *Id*.  The ALJ rejected Lottinger's allegation that she was impaired by carpal tunnel
(continued...)

singly or in combination, did not meet or medically equal an impairment listed in the Social Security regulations.[48]

Before proceeding to step four, the ALJ found that, through her DLI, Lottinger had the residual functional capacity ("RFC") to perform the full range of light work.[49] At step four, he determined that Lottinger was able to perform her past relevant work as an accounting clerk, which required light exertion.[50] He therefore held that she was not disabled.[51]

### C.   Plaintiff's Arguments for Reversal

Lottinger now raises eight grounds for reversal of the Commissioner's denial of benefits.

### A.   Failure to obtain opinion of medical expert

Lottinger argues that the ALJ erred by failing to consult a medical expert (ME) as to the medical equivalency of her cumulative impairments, as well as the effect of her cumulative impairments on her RFC.  She argues that an "objective consideration"

---

[47]   (...continued)
syndrome, fibromyalgia, and anxiety during the relevant period.  R. 13-14.

[48]   R. 14-16.  *See* 20 C.F.R.  Part 404, Subpart P, Appendix 1.

[49]   R. 16-19.

[50]   R. 19.

[51]   *Id.*

of the combined impairments and their secondary effects "might very well" have produced a listing equivalence.[52]

Lottinger bears the burden to prove disability,[53] and has not done so.  She cites no evidence to support her assertion regarding a listing equivalence, and identifies no specific error in the ALJ's assessment of her impairments or her RFC.

Moreover, Lottinger's argument that the ALJ erred by failing to consult an ME for an "updated medical opinion" is contrary to Fifth Circuit authority, which holds that the use of ME testimony is within the ALJ's discretion.[54]  This rule is recognized by *Brister v. Apfel*,[55] the case upon which Lottinger relies:

> The Court rejects Plaintiff's argument that the ALJ erred by failing to hear from a medical expert following Plaintiff's submission of additional evidence. It is clear that when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical or psychological consultant's findings, an updated medical opinion

---

[52]    Plaintiff's Motion, at 5.

[53]    *Perez*, 415 F.3d at 461.

[54]    *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989) (ALJ is not required to consult a medical expert for evaluation of mental RFC evidence, even in cases in which a expert has been consulted regarding physical limitations).  *See Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) ("the ALJ was not required to obtain medical expert testimony to determine whether his alcohol use was disabling; the use and consideration of medical expert testimony is solely within the discretion of the ALJ") (citing 20 C.F.R. §§ 404.1526, 404.1527(f)(2)(iii)); *White v. Soc. Sec. Admin.*, 129 F. App'x 905, 906 (5th Cir. 2005) ("the record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony") (citing *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir.1981)).

[55]    *Brister v. Apfel*, 993 F. Supp. 574 (S.D. Tex. 1998) (Kent, J.)

> regarding disability is required. *See* SSR 96-6p. In this case, the ALJ did
> not believe this additional evidence . . . would disturb his findings.[56]

*Brister* concerned the submission of "additional medical evidence" that could change

the State's findings regarding disability. Lottinger identifies no additional evidence

that might have altered the findings in her case.

Lottinger's first argument therefore fails.

### B.   Failure to properly develop the case

Lottinger next argues that her case should be remanded to the Commissioner

because the ALJ's failure to obtain an updated opinion from an ME amounted to a

failure to develop the case properly. As held in *Carey v. Apfel*, an ALJ "has a duty to

fully and fairly develop the facts relative to a claim for disability benefits."[57]

However, in the next sentence, the *Carey* court noted the requirement that a claimant

establish prejudice:

> This Court will not reverse the decision of an ALJ for failure to fully and
> fairly develop the record unless the claimant shows that he or she was
> prejudiced by the ALJ's failure. To establish prejudice, a claimant must
> demonstrate that he or she "could and would have adduced evidence that
> might have altered the result."[58]

Although Lottinger makes the vague claim that "[c]onsultation of a qualified ME at

---

[56]   *Id*. at 578 n.2 (emphasis original).

[57]   *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (*citing Brock v. Chater,* 84 F.3d 726
(5th Cir.1996); *Kane v. Heckler,* 731 F.2d 1216 (5th Cir. 1984)).

[58]   *Id*. (internal citations omitted) (quoting *Kane*, 731 F.2d at 1220).

the ALJ hearing would likely have resulted in a different outcome,"[59] she provides no argument or citation in support of this assertion.  Lottinger has failed to show that she was prejudiced by the ALJ's failure to consult an ME.

### C.   Violation of SSR 96-6p

In another iteration of her argument regarding the ALJ's decision not to call an ME to her administrative hearing, Lottinger claims that the ALJ's failure to obtain testimony from an ME violated Social Security Ruling (SSR) 96-6p.  This argument is substantively indistinguishable from her first argument.  Although this third argument highlights Social Security Ruling 96-6p, the Ruling merely states the same principle discussed above, *i.e.*, that the ALJ must obtain an updated medical opinion from a medical expert when additional medical evidence may, ***in the opinion of the ALJ***, change the prior finding regarding the severity of the claimant's impairments.[60] This argument therefore is rejected for the reasons stated previously.

Moreover, as above, Lottinger's briefing lacks any specific argument about why an updated medical opinion was appropriate in her case.  Although she asserts that "the ALJ has failed to recognize the critical importance of various diagnostic and evaluative procedures in the record and the manifestly positive clinical findings that

---

[59]     Plaintiff's Motion, at 6.

[60]     SSR 96-6p, *3-*4 (1996).

have been evidence in numerous examinations,"[61] she makes no citations to the record

and references no particular diagnostic procedures or clinical findings.

### D.   Rejection of treating physician's opinion

Lottinger argues that the ALJ erred in failing to give controlling weight to the

opinion of Dr. Eric Warwick, her treating physician.  She asserts that Dr. Warwick's

opinion, if given deference, "would result in Plaintiff meeting or equaling one of the

Commissioner's Listings or in Plaintiff's actual RFC being significantly less than the

full range of sedentary."[62]

The Fifth Circuit has held that, although the opinion of a treating physician

"should be afforded considerable weight in determining disability, 'the ALJ has sole

responsibility for determining a claimant's disability status.'"[63]  Moreover, a treating

physician's opinion "may be assigned little or no weight when good cause is

shown."[64] Good cause for discounting the opinion may be found when the treating

physician's opinion is unsupported by the evidence.[65]

The ALJ's opinion reflects that he reviewed the opinion evidence from Dr.

---

[61]   Plaintiff's Motion, at 7.

[62]   *Id.*

[63]   *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).

[64]   *Id*. at 455-56.

[65]   *Id*. at 456.

Warwick, but afforded it "very little weight" because the opinions did not pertain to the time period under consideration:

> [T]he undersigned is cognizant that Eric Warwick, M.D., completed a Residual Functional Capacity Questionnaire on February 7, 2008, indicating that the claimant was unable to perform even sedentary work. The undersigned, however, has afforded very little weight to this opinion as Dr. Warwick specifically noted that the claimant had been limited as set forth in the assessment since October 2006, some 10 months after the date she was last insured for benefits.[66]

The ALJ also reviewed four other questionnaires completed by Dr. Warwick in February 2008, which indicated that Lottinger was limited to less than sedentary work and had certain impairments meeting the Commissioner's listing requirements.  The ALJ also afforded these opinions "very little weight" because they were completed more than two years after Lottinger's DLI and because "treatment records submitted by the doctor contain no evidence that the claimant was limited as set forth in the assessments at any time prior to [her DLI]."[67]  The Court notes that the questionnaires do not identify any particular time period, do not ask when the claimant's symptoms began, and never squarely address the period before Lottinger's DLI.

    The ALJ's findings establish good cause for discounting Dr. Warwick's

---

[66]    R. 19 (citations omitted).

[67]    *Id.*  This finding comports with the standards of 20 C.F.R. § 404.1527(d), which states that a treating physician's opinion will be given less weight when it is not supported by relevant medical evidence.  The Court therefore rejects Lottinger's argument that the ALJ failed to conduct the analysis under Section 404.1527.

opinions, to the extent that Lottinger offered these opinions to establish disability before her DLI of December 31, 2005.[68]

Lottinger also faults the ALJ for not seeking clarification of Dr. Warwick's opinion.[69]  Lottinger has not presented any clarification or further opinions of Dr. Warwick, or others, that support her claim of disability during the relevant period. She therefore has failed to establish prejudice from the ALJ's decision not to seek additional information.[70]

### E.     Failure to take account of Lottinger's mental limitations

Lottinger argues that the ALJ's formulation of her RFC failed to consider her mental limitations.  She provides no citation to the record.  She also fails to identify the mental limitation or limitations upon which she relies. Elsewhere in her motion, however, she argues that she was impaired by anxiety, agoraphobia, and panic

---

[68]     *Newton*, 209 F.3d at 455-56.  *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (ALJ had good cause to disregard treating physician's opinion because his assessment was unsupported by the record; all other physicians' opinions and medical tests indicated that claimant had no physiological basis for her complaint); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (substantial evidence supported the ALJ's decision to disregard the opinions of the treating physician because the physician's diagnosis was based on dubious medical techniques and the underlying evidence was contradicted by both itself and outside medical evidence).

[69]     Plaintiff's Motion, at 8.

[70]     *See Newton*, 209 F.3d at 458 ("Reversal . . . is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information").

attacks.[71]

The ALJ considered Lottinger's argument that she was impaired by anxiety. He found that, during the relevant period, the medical records did not report that Lottinger exhibited any symptoms of anxiety.  He also found that her mental impairment resulted in only mild restrictions in daily living, social functioning, or concentration, persistence and pace.[72]  Lottinger has not cited, and the Court has not found, evidence in the record suggesting that this finding was in error.  Moreover, at her administrative hearing, Lottinger testified that she had panic attacks in August 2007 and March 2008, but before those attacks had not had one for "at least five, six, seven years."[73]

Given the ALJ's determination that the evidence of record did not demonstrate that Lottinger suffered from mental limitations during the period under consideration, he was not required to consider the alleged mental limitations when determining Plaintiff's RFC.  Plaintiff's claim of error therefore must fail.[74]

_____

[71]   *See*, *e.g.*, Plaintiff's Motion, at 4.

[72]   R. 14.

[73]   R. 59.  *See* R. 58 ("I have not had problems with my anxiety . . . in years").

[74]   Lottinger also asserts that the ALJ erred in relying on Vocational Expert (VE) testimony that was in response to a hypothetical question that failed to reflect Plaintiff's mental limitations.  This claim has no application to the facts of Lottinger's case, since no VE testified at her administrative hearing.  Plaintiff's counsel is
(continued...)

Lottinger further claims that the ALJ erred by failing to consult an ME regarding her mental RFC.  As held above, the decision to consult an ME is squarely within the ALJ's discretion.[75]  Even in cases in which an expert has been consulted regarding physical limitations, the ALJ is not required to consult an ME for evaluation of mental RFC evidence.[76]

### F.      Failure to consider non-exertional impairment of pain

Lottinger argues that the ALJ erred in failing to consider the non-exertional impairment of pain and its effects on her ability to perform the full range of light work.

An ALJ is required to consider subjective evidence of non-exertional ailments, such as pain, which may have a disabling effect.[77]  However, pain constitutes a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."[78]  Lottinger's briefing provides no citations to the record,

---

[74]     (...continued)
        admonished to ensure that their court filings include only arguments that are relevant to their client's case.

[75]     *Haywood*, 888 F.2d at 1467-68; *see Dominguez*, 286 F. App'x at 186; *White*, 129 F. App'x at 906.

[76]     *Haywood*, 888 F.2d at 1467-68.

[77]     *James v. Bowen*, 793 F.2d 702, 705 (5th Cir. 1986); *see Beck v. Barnhart*, 205 F. App'x 207, 212 (5th Cir. 2006).

[78]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001);  *see Beck*, 205 F. App'x
(continued...)

and fails even to identify the location of the pain upon which she relies.  She clearly has failed to demonstrate pain that is "constant, unremitting, and wholly unresponsive to therapeutic treatment."[79]  Substantial evidence supports the ALJ's finding that Lottinger was capable of light work.[80]

### G.   Erroneous finding that certain impairments were not "severe"

Lottinger argues that the ALJ erred in finding that her vertigo, agoraphobia, panic attacks, bilateral carpal tunnel syndrome, and fibromyalgia were not "severe." She argues that the "severity" step of the sequential evaluation imposes only a mild burden of proof on the claimant.[81]

---

[78]   (...continued)
at 212.

[79]   *See Chambliss*, 269 F.3d at 522.

[80]   *See Carnahan v. Apfel*, 247 F.3d 241, 2001 WL 43543, *3 (5th Cir. 2001) (although evidence showed that claimant had pain, there was no substantial evidence that the pain was "'wholly unresponsive to therapeutic treatment,'" and therefore substantial evidence supported the ALJ's finding that claimant had no significant nonexertional limitations of pain) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990)).

[81]   Plaintiff's Motion, at 10-11 (citing, *inter alia*, *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (an impairment may be found not to be severe only if it is a "slight abnormality" with "minimal effect" on the individual and no interference with the person's ability to work); *id.* at 393 (combined effect of impairments must be considered); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (only the most trivial impairments can be rejected)).  The Fifth Circuit has held that the Commissioner may not use the severity requirement to summarily dismiss, without consideration of the remaining steps of the sequential analysis, the claims of those whose impairments are more than a slight abnormality.  *Loza*, 219 F.3d at 391-92.

Lottinger provides no record citations regarding these additional impairments, and makes no attempt to argue that the impairments were severe in 2005. The ALJ made specific findings that Lottinger's medical records did not support the presence of carpal tunnel syndrome, fibromyalgia, or anxiety during the period at issue.[82] Substantial evidence supports the ALJ's finding that the additional impairments were not severe.[83] Lottinger has the burden to establish disability,[84] and has not done so.

Moreover, Lottinger's argument regarding the severity of certain additional impairments is irrelevant because the ALJ's determination was not based on a conclusion that her impairment was not severe (step two), but rather on his conclusion that she had the RFC to perform her past relevant work (step four). The ALJ in fact determined at step two that Lottinger did have severe impairments,[85] and proceeded to step three. Additional grounds for a finding of severity, as Lottinger now urges, would not entitle her a finding of disability. "[H]aving a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the

---

[82]     R. 13-14.

[83]     *See Audler*, 501 F.3d at 477.

[84]     *See Perez*, 415 F.3d at 461.

[85]     R. 13 ("Through the date last insured, the claimant had the following severe impairments: tinnitus, hypertension, degenerative disc disease, a history of deep vein thrombosis, and obesity").

regulations."[86]

### H.    Failure to consider side effects of medications

Lottinger argues that the ALJ failed even to discuss, much less to consider, the side effects from the Plaintiff's multiple medications on Plaintiff's ability to work, as required by SSR 96-7p and SSR 96-8p.  The SSRs cited require consideration of evidence in the record showing limitations imposed by side effects of medications.

As factual support for her argument, Lottinger cites to her hearing testimony that her medications caused sleepiness and mental fuzziness.[87]  The testimony did not identify any particular time period.  However, the questions to Lottinger were phrased in the present tense, and therefore her answer appears to pertain to the time of the administrative hearing, which was April 2008.  Plaintiff also referred in her testimony to the list of medications in the record, but that list is dated March 18, 2008.[88]  There is no indication that her answer pertained to her condition in 2005.

In response to Defendant's argument that Plaintiff had not established medicinal side effects during the relevant period, Plaintiff cites in her reply to Dr. Warwick's

---

[86]    *Shipley v. Sec. of Health and Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).  *See Ledezma v. Apfel*, 161 F.3d 8 (5th Cir. 1998); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987).

[87]    R. 59.

[88]    R. 475 (Hearing Exhibit B21F).

identification of dizziness as a side effect of Lottinger's medications.[89]   This assessment by Dr. Warwick, however, was made in February 2008.

Plaintiff has failed to show that the ALJ erred by failing to consider the side effects of her medications.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 11] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 12] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **26<u>th</u>** day of **February, 2010**.

Nancy F. Atlas
United States District Judge

---

[89]     R. 448.